## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALFRED MEYERS, INC.,<br><br>                          Plaintiff,<br><br>v.<br><br>D'ANNUNZIO & CO., LLC; D'ANNUNZIO<br>& CO., INC., D'ANNUNZIO<br>DISTRIBUTION, INC. and PHILART, INC.,<br><br>                        Defendants. | Civ. No.: 07-CV-3254 (KK)<br><br>*Civil Action*<br><br>**ANSWER TO THE AMENDED<br>COMPLAINT, SEPARATE<br>DEFENSES, COUNTERCLAIM AND<br>THIRD PARTY COMPLAINT** |
| D'ANNUNZIO & CO., LLC; D'ANNUNZIO<br>& CO., INC., D'ANNUNZIO<br>DISTRIBUTION, INC. and PHILART, INC.,<br><br>                        Third Party Plaintiffs,<br><br>v.<br><br>J. KLEINHAUS & SONS, LLC,<br><br>                        Third Party Defendant. | |

Defendants D'Annunzio & Co., LLC, D'Annunzio & Co., Inc., D'Annunzio Distribution, Inc. and Philart, Inc. (collectively, the "Defendants") by way of Answer to the Amended Complaint, states as follows:

## AS TO THE PARTIES

1.      The Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 of the Amended Complaint and leave the plaintiff to its proofs.

2.      The Defendants deny the allegations in Paragraph 2 of the Amended Complaint. D'Annunzio & Co., LLC does not exist.  To the extent that the allegations in Paragraph 2 of the Amended Complaint are intended to allege wrongdoing on behalf of the Defendants, same are denied and plaintiff is left to its proofs.

3.      The Defendants admit the allegations in Paragraph 3 of the Amended Complaint.

4.      The Defendants admit the allegations in Paragraph 4 of the Amended Complaint.

5.      The Defendants admit the allegations in Paragraph 5 of the Amended Complaint.

## AS TO JURISDICTION AND VENUE

6.      The Defendants admit the allegations in Paragraph 6 of the Amended Complaint.

7.      The Defendants admit the allegations in Paragraph 7 of the Amended Complaint.

## AS TO THE FIRST CAUSE OF ACTION

8.      The Defendants repeat and reallege their answers to Paragraphs 1 through 7 as if set forth more fully herein.

9.      The Defendants deny the allegations in Paragraph 8 of the Amended Complaint.

10.     The Defendants deny the allegations in Paragraph 9 of the Amended Complaint.

## AS TO THE SECOND CAUSE OF ACTION

11.     The Defendants repeat and reallege their answers to Paragraphs 1 through 10 as if set forth more fully herein as its answer to Paragraph 10 of the Amended Complaint.

2

12.    The Defendants admit that defendant D'Annunzio Distribution, Inc. received certain goods from plaintiff, but denies the allegations in Paragraph 11 of the Amended Complaint as to the remainder of the Defendants and leave the plaintiff to its proofs.

13.    The Defendants deny the allegations in Paragraph 12 of the Amended Complaint.

14.    The Defendants deny the allegations in Paragraph 13 of the Amended Complaint.

15.    The Defendants deny the allegations in Paragraph 14 of the Amended Complaint.

16.    The Defendants deny the allegations in Paragraph 15 of the Amended Complaint.

## AS TO THE THIRD CAUSE OF ACTION

17.    The Defendants repeat and reallege their answers to Paragraphs 1 through 16 as if set forth more fully herein as its answer to Paragraph 16 of the Amended Complaint.

18.    The Defendants deny the allegations in Paragraph 17 of the Amended Complaint.

19.    The Defendants deny the allegations in Paragraph 18 of the Amended Complaint.

20.    The Defendants deny the allegations in Paragraph 19 of the Amended Complaint.

21.    The Defendants deny the allegations in Paragraph 20 of the Amended Complaint.

## AS TO THE FOURTH CAUSE OF ACTION

22.    The Defendants repeat and reallege their answers to Paragraphs 1 through 21 as if set forth more fully herein as its answer to Paragraph 21 of the Amended Complaint.

23.    The Defendants admit that defendant D'Annunzio Distribution, Inc. received certain goods on consignment from plaintiff, but denies the allegations in Paragraph 22 of the Amended Complaint as to the remainder of the Defendants and leave the plaintiff to its proofs.

24.    The Defendants deny the allegations in Paragraph 23 of the Amended Complaint.

25.    The Defendants deny the allegations in Paragraph 24 of the Amended Complaint.

## AS TO THE FIFTH CAUSE OF ACTION

26.    The Defendants repeat and reallege their answers to Paragraphs 1 through 25 as if set forth more fully herein as its answer to Paragraph 25 of the Amended Complaint.

27.    The Defendants deny the allegations in Paragraph 27 of the Amended Complaint.

28.    The Defendants deny the allegations in Paragraph 28 of the Amended Complaint.

## AS TO THE PRAYER FOR RELIEF

29.    The Defendants deny the plaintiff's entitlement to any and all relief sought in the Amended Complaint.

## SEPARATE/AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted. Defendants reserve the right to file a motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, for lack and/or failure of consideration.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of waiver, estoppel, laches and/or unclean hands.

### FOURTH DEFENSE

Plaintiff's recovery for any alleged damages, if any, is barred or must be reduced due to Plaintiff's failure to mitigate damages.

4

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Defendants did not breach any duty owed to Plaintiff.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own wrongful conduct or failure to act, which was the sole and proximate cause of the allegations complained of in the Amended Complaint.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff breached the parties' agreement.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants have performed their obligations under the agreement with Plaintiff.

## NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff made certain misrepresentations in an intentional and/or negligent manner relative to the agreement and are therefore barred from recovery.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because there is no cognizable legal basis pursuant to contract, statute or common law for its claim for an award of attorney's fees and costs.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has sustained no

damage.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Defendants are entitled to a set off for any amounts due and owing.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because of Plaintiff's breach of the covenant of good faith and fair dealing owed to the Defendants.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because defendants D'Annunzio & Co., LLC, D'Annunzio & Co., Inc. and Philart, Inc. are not proper parties in interest in this case.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because defendant D'Annunzio & Co., LLC is a non-existent entity and did not contract with Plaintiff.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Defendants are excused from performance of any agreement with Plaintiff based upon the doctrine of impracticability.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Defendants returned the consigned goods to Plaintiff.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to join an indispensable party to this action, i.e., J. Kleinhaus & Sons, LLC.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend their Answer and to assert such additional affirmative and/or separate defenses as are made known to them during discovery.

**WHEREFORE,** Defendants deny that they liable to Plaintiff for any sum of money whatsoever and requests that the Court dismiss the Amended Complaint in its entirety and with prejudice, and award Defendants their costs, attorneys' fees, and such other and further relief as it deems just and proper.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

Defendants/Counterclaim Plaintiffs/Third Party Plaintiffs D'Annunzio & Co., LLC, D'Annunzio & Co., Inc., D'Annunzio Distribution, Inc. and Philart, Inc. (hereafter referred to collectively as the "Counterclaim/Third Party Plaintiffs"), by their attorneys, Mandelbaum, Salsburg, Lazris, Gold & Discenza, P.C., bring this action against Plaintiff/Counterclaim Defendant Alfred Meyers, Inc. ("Meyers") and Third Party Defendant J. Kleinhaus & Sons, LLC. ("Kleinhaus"), and state the following in support thereof:

## THE PARTIES

1.     Counterclaim/Third Party Plaintiff D'Annunzio & Co., LLC is a non-existent entity that was sued by Plaintiff as a direct defendant in the above captioned matter.

2.     Counterclaim/Third Party Plaintiff D'Annunzio & Co., Inc. is a New Jersey corporation having its principal place of business at 60 G Commerce Way, Totowa, New Jersey 07512.

3.     Counterclaim/Third Party Plaintiff D'Annunzio Distribution, Inc. is a New Jersey corporation having its principal place of business at 60 G Commerce Way, Totowa, New Jersey 07512.

7

4.      Counterclaim/Third Party Plaintiff Philart, Inc. is a New Jersey corporation having its principal place of business at 60 G Commerce Way, Totowa, New Jersey 07512.

5.      Upon information and belief, Counterclaim Defendant Meyers is a New York corporation having its principal place of business located at 608 Fifth Avenue, New York, New York 10020.

6.      Upon information and belief, Third Party Defendant Kleinhaus is a New York limited liability company with its principal place of business located at 15 West 47th Street, New York, New York 10036.

## FACTS COMMON TO ALL COUNTS

7.      Arthur Dannunzio is a principal of D'Annunzio Distribution, Inc. ("DDI").

8.      Upon information and belief, Jonathan Kleinhaus is an agent, employee and/or principal of Meyers.

9.      In or about 2005, Jonathan Kleinhaus, acting on behalf of Meyers and Kleinhaus, engaged in multiple telephone negotiations over a period of time with Arthur Dannunzio for the purpose of entering into an agreement between and among DDI, Kleinhaus and Meyers.

10.     During at least one of the aforementioned telephone negotiations, Dennis Meyers, a principal of Meyers, participated in the negotiations.

11.     Jonathan Kleinhaus, acting upon actual and/or apparent authority to bind Kleinhaus and Meyers, advised Arthur Dannunzio via telephone that Kleinhaus and Meyers had an agreement with DDI.

12.     During and as a consequence of the aforesaid telephone negotiations, Kleinhaus and Meyers entered into an oral agreement with DDI (hereafter, the "Agreement").

13.     In a subsequent meeting at Meyers' office in New York at which Arthur

8

Dannunzio, Dennis Meyers, Jonathan Kleinhaus, Al Kleinhaus and at least one other individual from Kleinhaus were in attendance, Meyers and Kleinhaus ratified the Agreement that had been entered into between and among DDI, Meyers and Kleinhaus.

14.    Kleinhaus and Meyers agreed to supply diamonds to DDI to be used in DDI's "Celebrations" jewelry line, which would be set in gold supplied by DDI.

15.    The Celebrations line was exclusively designed, manufactured and sold by DDI to certain jewelry retailers around the country.

16.    Kleinhaus agreed to supply "fancy-shaped" diamonds.

17.    Meyers agreed to supply "round-shaped" diamonds.

18.    Kleinhaus and Meyers each agreed to pay $40,000.00 toward advertising of the Celebrations line.

19.    DDI agreed to bear the cost of the design, labor, manufacture, financing, insurance, all other advertising costs, sales commissions paid to DDI salespeople, and any other costs associated with the creation and sale of the Celebrations line.

20.    Kleinhaus and Meyers agreed to supply diamonds for (a) consignment and (b) invoice orders from jewelry retailers.

21.    With respect to the supply of diamonds on consignment, Kleinhaus and Meyers agreed to supply diamonds for four (4) sample lines, at no cost to DDI, to be used on the road by DDI salespeople in connection with DDI's sales to retailers.

22.    DDI agreed to insure the diamonds utilized in the consigned sample lines.

23.    With respect to invoice orders, once DDI received retailers' orders for the Celebrations line, DDI would process the order by creating a purchase order and would send the purchase order to Kleinhaus and Meyers.

9

24.    Among other information, the purchase orders set forth the retailer's payment terms.

25.    For example, the retailer may have thirty (30) days or more from receipt of the merchandise to pay.

26.    Pursuant to the Agreement, DDI had absolute discretion to set the payment terms of the sale of the Celebrations line jewelry with each retailer from whom it obtained an order.

27.    In nearly every instance, the retailers' payment terms were printed on invoices generated by Kleinhaus and Meyers to DDI.

28.    Pursuant to the Agreement, Kleinhaus and Meyers had absolute discretion to determine the markup cost of the diamonds they supplied, which cost would be passed through to the retailers.

29.    Pursuant to the Agreement, DDI had absolute discretion to determine the price for each completed piece of jewelry and was entitled to keep any profit resulting therefrom, less the invoiced cost of the diamonds supplied by Kleinhaus and/or Meyers.

30.    Pursuant to the Agreement, Kleinhaus and Meyers were required to deliver the diamonds to DDI within one (1) business week of receiving the purchase order from DDI.

31.    Pursuant to the Agreement, Kleinhaus and Meyers were required to deliver the correct size diamonds as agreed upon by the parties at the outset of the Agreement.

32.    Kleinhaus and Meyers were informed about the correct size diamonds needed for DDI's Celebrations line designs because Kleinhaus and Meyers each inspected DDI's jewelry design molds at the outset of the Agreement and agreed they could each supply the correct sizes necessary for the designs.

33.    Additionally, pursuant to the Agreement, Kleinhaus and Meyers were required to

10

deliver GHVS grade diamonds as agreed upon by the parties at the outset of the Agreement.

34.    Kleinhaus and Meyers knew and understood that it took approximately two to three weeks for DDI to manufacture the jewelry after the receipt of the correct size and quality of diamonds.

35.    Pursuant to the Agreement, it was expressly agreed to and understood by Kleinhaus and Meyers that they would not get paid for the diamonds supplied until the retailers paid DDI for the merchandise.

36.    Once the retailer paid DDI for the merchandise, DDI would pay Kleinhaus and/or Meyers for the diamonds supplied in connection with the purchased merchandise.

37.    For several of the DDI designs, both the fancy-shaped and round-shaped diamonds would be used together. Thus, diamonds from both Kleinhaus and Meyers were necessary to complete the manufacture of a jewelry piece.

38.    Kleinhaus and Meyers knew and understood that if a given design required both round-shaped and fancy-shaped diamonds, the piece could not be completed and shipped to the retailer until all of the diamonds necessary for the completion of the piece were supplied by Kleinhaus and Meyers.

39.    From time to time, Kleinhaus and/or Meyers would authorize the sale of a consignment piece for which DDI would send Kleinhaus and/or Meyers a check for the payment of the diamonds supplied for the consignment piece sold.

40.    Beginning at the commencement of the Agreement and continuing thereafter, Kleinhaus and Meyers were frequently late in supplying diamonds to DDI.

41.    Beginning at the commencement of the Agreement and continuing thereafter, Kleinhaus and Meyers frequently supplied inferior diamonds to DDI, which DDI had to return

11

because the diamonds were not GHVS quality as had been agreed.

42.     Beginning at the commencement of the Agreement and continuing thereafter, Kleinhaus and Meyers frequently supplied DDI improperly sized diamonds, which DDI had to return or incur additional labor and materials costs to retrofit improperly sized diamonds into DDI's design molds.

43.     Kleinhaus and Meyers' late deliveries, supply of inferior grade and improperly sized diamonds, resulted in the cancellation and return of orders by retailers, expansion of retailers' payment terms, lost opportunities for DDI to make sales during key holiday seasons, delays in manufacturing and shipment, among other costs and damages sustained by DDI.

44.     Despite their own wrongful conduct, Kleinhaus and Meyers unreasonably and in breach of the Agreement, demanded that DDI return diamonds that had already been manufactured into jewelry and/or shipped to retailers.

45.     As a result of Kleinhaus and Meyers' unreasonable and improper demands, DDI was forced to recall hundred of thousands of dollars worth of jewelry from retailers all over the country in order to remove and return the diamonds demanded by Kleinhaus and Meyers.

46.     As a result of Kleinhaus and Meyers' unreasonable and improper demands, DDI lost profits, had to credit retailers, incurred additional labor and supply costs to remove the diamonds and re-manufacture replacement jewelry, and had to melt down the gold settings at a loss to DDI, among other damages.

### AS FOR THE FIRST COUNT
### (Breach of Contract Against Kleinhaus and Meyers)

47.     The allegations of the preceding paragraphs are incorporated herein as if fully set forth below.

48.     For valuable consideration, DDI entered into an agreement with Kleinhaus and

Meyers.

49.    Kleinhaus and Meyers, jointly and severally, have breached the terms and conditions of the Agreement.

50.    As a direct and proximate result of their respective breaches of the Agreement, DDI has sustained damages.

51.    To the extent that it is determined that parties to the Agreement included D'Annunzio & Co., LLC, D'Annunzio & Co., Inc. and Philart, Inc. as alleged by the Plaintiff in the Amended Complaint, D'Annunzio & Co., LLC, D'Annunzio & Co., Inc. and Philart, Inc. have sustained damages as a direct and proximate result of Kleinhaus and Meyers' respective breaches of the Agreement.

WHEREFORE, Counterclaim/Third Party Plaintiffs demand entry of judgment on this First Count against the Counterclaim Defendant J. Kleinhaus & Sons, LLC and Third Party Defendant Alfred Meyers, Inc., jointly and severally, awarding as follows:

        a.     Compensatory damages;

        b.     Consequential damages, including without limitation, lost profits;

        c.     Incidental damages;

        d.     Interest, attorneys' fees and costs; and

        e.     Such other and further relief as the Court may deem to be appropriate.

### AS FOR THE SECOND COUNT
**(Breach of the Duty of Good Faith and Fair Dealing Against Kleinhaus and Meyers)**

52.    The allegations of the preceding paragraphs are incorporated herein as if fully set forth below.

53.    In entering into the Agreement with DDI, Kleinhaus and Meyers each undertook a

duty of good faith and fair dealing owed to DDI.

54.    Kleinhaus and Meyers, jointly and severally, breached their duty of good faith and fair dealing owed to DDI.

55.    As a direct and proximate result of their respective breaches, DDI has sustained damages.

56.    To the extent that it is determined that parties to the Agreement included D'Annunzio & Co., LLC, D'Annunzio & Co., Inc. and Philart, Inc. as alleged by the Plaintiff in the Amended Complaint, D'Annunzio & Co., LLC, D'Annunzio & Co., Inc. and Philart, Inc. have sustained damages as a direct and proximate result of Kleinhaus and Meyers' respective breaches of the duty of good faith and fair dealing.

WHEREFORE, Counterclaim/Third Party Plaintiffs demand entry of judgment on this Second Count against the Counterclaim Defendant J. Kleinhaus & Sons, LLC and Third Party Defendant Alfred Meyers, Inc., jointly and severally, awarding as follows:

a.    Compensatory damages;

b.    Consequential damages, including without limitation, lost profits;

c.    Incidental damages;

d.    Interest, attorneys' fees and costs; and

e.    Such other and further relief as the Court may deem to be appropriate.

MANDELBAUM, SALSBURG, LAZRIS,
GOLD & DISCENZA, P.C.
Attorneys for Defendants/Counterclaim/
Third Party Plaintiffs

By: _____ */s/ Michael A. Saffer* _____
MICHAEL A. SAFFER, ESQ. (MS-2997)

DATED:    August 24, 2007

14

**JURY DEMAND**

Defendants/Counterclaim/Third Party Plaintiffs demand a trial by jury as to all triable issues.

MANDELBAUM, SALSBURG, LAZRIS,
GOLD & DISCENZA, P.C.
Attorneys for Defendants/Counterclaim/
Third Party Plaintiffs

By: _____ */s/ Michael A. Saffer* _____
                MICHAEL A. SAFFER, ESQ. (MS-2997)

DATED:        August 24, 2007